■ In the Matter of UNDERHILL CONSTRUCTION CORP., as Successor in Interest of CARVER CONCRETE CORP., Petitioner, v STATE TAX COMMISSION, Respondent.—Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the State Tax Commissioner which denied petitioner's application for revision of a determination or refund of sales or use taxes. Petitioner is the successor in interest of Carver Concrete Corp. with its main place of business in the State of New York. On June 21, 1968, Carver.Concrete Corp. was awarded a subcontract for certain concrete work on a housing project known as Phipps Plaza South located in the City of New York in the sum of $2,451,000. The agreement was executed by HRH Construction Corporation, the general contractor, and petitioner as subcontractor on August 19, 1969. Work on the contract was actually started on December 17, 1968 and was substantially completed in August, 1969. Petitioner started to purchase materials for the project commencing in June and August, 1968. Petitioner bases its demand for relief on the ground that it agreed to and was performing its contract under a pre-existing lump sum contract on and prior to April 1, 1969 when the sales tax law was revised. Petitioner seeks a revision of the determination, or for refund of sales and use taxes for the period June 1, 1969 through November 1, 1970 in the amount of $4,335.94. The State sales tax rate in effect prior to April 1, 1969 was 2% which was increased effective April 1, 1969 to 3%. Petitioner filed sales and use tax returns for the period June 1, 1969 through November 1, 1970 claiming refunds of sales taxes paid in the amount of $7,611.45. Partial refunds were allowed resulting in a denial of refund in the amount of $4,335.94. Since the enactment of the increase in the sales tax became effective prior to the completion of petitioner's contract, but subsequent to the commencement thereof, petitioner claims it is entitled to a refund of the additional 1% tax paid on supplies purchased subsequent to April 1, 1969, under the provisions of section 1119 (subd [a], par 3) of the Tax Law. That section provides for refunds of sales taxes paid on tangible personal property purchased by a contractor for use in the performance of a pre-existing lump sum contract, if purchased after an increase in the tax rate. Subdivision (a) of section 1119 of the Tax Law provides, in part, as follows: "1119. (a) Refunds or credits based on proof of certain uses. Subject to the conditions and limitations provided for herein, a refund or credit shall be allowed for tax paid pursuant to subdivision (a) of section eleven hundred five or section eleven hundred ten * * * (3) on the sale to or use by a contractor or subcontractor of tangible personal property if that property is used by him solely in the performance of a pre-existing lump sum or unit price construction contract * * * (For the purpose of clause (3) of the preceding sentence, the term 'pre-existing lump sum or unit price construction contract' shall mean a contract for the construction of improvements to real property under which the amount payable to the contractor or subcontractor is fixed without regard to the costs incurred by him in performance thereof, and which (i) was irrevocably entered into prior to the date of enactment of this article or the enactment of a law increasing the rate of tax imposed under this article * * *)." The statute defines "pre-existing * * * contract" to mean one "irrevocably entered into" prior to the tax increase. The State Tax Commission has held that the petitioner "entered into" a contract on August 19, 1969 when the written document was executed. The purpose of the provision at issue was obviously intended to apply to a contractor who

had computed his bid based on the then existing tax rate, and then obligated himself to perform based on his bid. Although not so stating, it can be inferred that the contractor's obligation be evidenced by a written agreement. Oral agreements do not meet the test of the statute because they cannot be considered "irrevocable", and there is the ever present problem of when an oral agreement is entered into and what are the terms thereof. The State Tax Commission concluded as follows: "A. That the 'agreement' entered into was, in fact, not a pre-existing sump [sic] sum or unit price construction contract and therefore the element or irrevocability was not present as required by section 1119(a)(3) of the Tax Law. Section 1119(a) reads in part, 'the term pre-existing lump sum or unit price construction contract shall mean a contract * * * which was irrevocably entered into prior to the date of enactment * * *' Nowhere in the aforementioned agreement did the parties thereto indicate or allude to the irrevocable nature of the agreement. Nor did the applicant ascertain the existence of a surety which would have undertaken the completion of the contract in the event of default by the applicant. This is not a dispute between the parties where part performance or partial payment would be relevant to the issue whether a binding agreement existed between them. A tax statute is to be strictly construed, and if any ambiguity or uncertainty exists, it is to be resolved in favor of the sovereign and against exemption (*Matter of Aldrich v Murphy*, 42 AD2d 385). It is submitted that the phrase "irrevocably entered into" is a broad statutory term, and therefore, the construction given to it by the respondent, if reasonable, is not subject to court review (*Matter of Hellerstein v Assessor of Town of Islip*, 37 NY2d 1; *Matter of Young v Bragalini*, 3 NY2d 602). The determination of the State Tax Commission is supported by the record and is based on a rational and reasonable construction of the statute. Determination confirmed, and petition dismissed, without costs. Sweeney, J. P., Staley, Jr., Main and Larkin, JJ., concur.

Mikoll, J., dissents and votes to annul in the following memorandum. Mikoll, J. (dissenting). I respectfully dissent. At issue here is whether it was rational for the Tax Commission to decree that the parties to the subject contract were not performing pursuant to a binding and irrevocable agreement as of April 1, 1969 (see *Matter of Pell v Board of Educ.*, 34 NY2d 222). I am in agreement with the interpretation of section 1119 of the Tax Law ascribed to it by the majority, namely, that the statute was intended to apply to a contractor who had computed his bid based on the then existing tax rate and then *obligated* himself to perform based on his bid. However, if the Legislature had intended to limit the applicability of the provision solely to written contracts they would have stated such purpose. To glean from the term "irrevocable" an intention to limit the section solely to written contracts is not rational. In law there is no distinction between agreements made by words and those made by conduct (*Jemzura v Jemzura*, 36 NY2d 496, 504). In the instant case, the parties to the contract had demonstrated an intent to be bound by their agreement and acted pursuant to the terms of the contract they made on June 21, 1968 and which was reduced to writing on August 19, 1969. The actions of the parties clearly indicated the existence of a binding agreement. Carver started to purchase material for the project in June of 1968 and began the work in December of 1968. Prior to the execution of the written contract, substantial work had been done on the project by Carver. In addition, some $1,850,000 had been incurred in costs, and this sum plus a 10% retention fee had already been paid to Carver. There was clearly an irrevocable contract entered into between

Carver and the HRH Construction Corporation. The determination should be annulled, and the petition granted.